```
                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF MARYLAND

LEVIKA GRAY-KOYIER             *

         Plaintiff             *

     vs.                       *    CASE NO. MJG-17-CV-1888

BALTIMORE COUNTY PUBLIC        *
SCHOOLS
                               *

         Defendant             *

*    *    *    *    *    *    *    *    *
```

## MEMORANDUM AND ORDER

The Court has before it Defendant Baltimore County Public Schools' Motion to Dismiss Plaintiff's Amended Complaint [ECF No. 22] and the materials submitted relating thereto.[1] The Court finds that a hearing is not necessary.

I. <u>BACKGROUND</u>

    a. <u>The Parties and the Claims</u>

Levika Gray-Koyier ("Gray-Koyier" or "Plaintiff"), a former teacher, brings four claims against Baltimore County Public Schools ("BCPS" or "Defendant"):

---

[1] Defendant previously filed a motion to dismiss Plaintiff's original Complaint [ECF No. 3]. Because the Court has allowed Plaintiff to file an Amended Complaint [ECF No. 18], this first motion will be denied as moot.

1. <u>Count I</u> – Age and Gender Discrimination under Title VII and the Age Discrimination in Employment Act ("ADEA"),

2. <u>Count II</u> – Retaliation, in violation of Title VII;

3. <u>Count III</u> – Sexual Harassment (Hostile Work Environment), in violation of Title VII; and

4. <u>Count IV</u> – Disability Discrimination, in violation of the Americans with Disabilities Act ("ADA").

Gray-Koyier seeks recovery of actual damages, punitive damages, and reasonable attorneys' fees and costs. By the instant motion, BCPS seeks dismissal of all counts as time-barred, or, alternatively, the dismissal of the age and disability discrimination claims for inadequacy of the pleading.[2]

b. <u>Factual Background</u>[3]

In November 2014, Gray-Koyier had worked for ten years in the BCPS system as a substitute teacher, had remained in good standing, and had met all work performance requirements without any disciplinary incidents. Am. Compl. ¶ 17, ECF No. 18. Gray-Koyier's superiors had praised her "classroom management and instruction delivery" style, and the Old Court principal had told the administration that she "felt relieved and lucky to 'finally' have Plaintiff to fill the position and stay with

---

[2] At this time, BCPS does not seek to dismiss the other Counts for failure to state a claim.
[3] The "facts" herein are as alleged by Plaintiff and are not necessarily agreed upon by Defendants.

them." Id. ¶ 18. In November 2014, Gray-Koyier, then forty-eight years old, was promoted by BCPS to be a long-term substitute teacher for seventh grade science classes at Old Court Middle School. Id. ¶¶ 17-19.

When promoted, Gray-Koyier was the "oldest member of the Old Court science department." Id. ¶ 19. Mr. Johnson ("Johnson"), the Chair of the science department, began to take an interest in her. Id. ¶ 19. Johnson would stand and watch her teach (with no formal evaluation pending), offer her rides home, and inquire about her personal life, actions which Plaintiff found to be "not typical" based on her experiences with prior supervisors and department chairs. Id. ¶ 20.

One time, Johnson insisted that she report to a teacher education day that substitute teachers did not typically attend and were not paid for. Id. When she arrived at the school, she realized that the training would be held off-site at another location. Id. She declined Johnson's offer for a ride and rode to the training with someone else. Id. During the training, Johnson publicly asked her to be his "assistant," which she found "odd, at best, and humiliating, at worst." Id. He asked her to hold up props and constantly occupied her attention throughout the training day. Id. Afterwards, Johnson insisted that she help him in the library after most of the other teachers had gone home. Id.

Gray-Koyier did not appreciate these actions, which she considered to be unwanted advances. Id. ¶ 73. She began to "seek[] out other colleagues" for support with her tasks instead of seeking out Johnson. Id. ¶ 21. Johnson then allegedly began to verbally harass her, berate her in front of her students, and withhold information that she needed to perform her job. Id. ¶¶ 20-21. When she did ask for his assistance on a student testing matter, Johnson berated her in front of her students, yelling "Are you kidding me, you are an educated person and you don't know how to do this." Id. ¶ 21. At one point, Johnson "stood outside her classroom during her lunch period, watched her, and then demanded a conversation and refused to leave the room when Plaintiff asked him to." Id.

Gray-Koyier complained about Johnson to the school principal and assistant principal. Id. On February 6, 2015, she raised several of her concerns at a meeting with the principal, assistant principal, and Johnson. Id. ¶¶ 21-23.

One portion of the meeting related to a disability request. Around this time, Gray-Koyier was recovering from injuries suffered in a September 2014 automobile accident. Id. ¶ 32. As a result, she wore, on a daily basis, bilateral ankle, foot, wrist, and back braces. Id. ¶¶ 32, 92. Gray-Koyier alleges that she could perform all the essential functions as a

4

substitute teacher despite these disabilities, and had already done so for several months.  Id. ¶¶ 89, 96.

Pursuant to a doctor's note, Gray-Koyier requested "reasonable accommodations" in light of her injuries, including a 32-hour work week and other accommodations.  Id. ¶¶ 32-34, 84. The school principal replied "no problem" and also proposed to relieve her from bus duty and release her from other coverage duties.  Id. ¶¶ 84-85.  The school principal instructed the assistant principal to immediately implement the discussed changes.  Id.  However, these accommodations were allegedly withdrawn when Gray-Koyier was later asked over the announcement system to perform those very same coverage duties.  Id. ¶¶ 85-86.

Another portion of the meeting related to Johnson's behavior.  During the meeting, Johnson stated his inability to work with Gray-Koyier and announced "it was [either] him or the Plaintiff."  Id.  He "dominated the conversation" and announced "he could not work with 'this women[,] [sic] . . . [s]he's just a battered women [sic].'"  Id. ¶ 24.  Gray-Koyier understood that Johnson was referencing her history of domestic violence, which she had never shared with him, and was emotionally distraught by this abusive use of details from her personal

5

life.[4]  Id. ¶¶ 25-30.  She was "shocked and humiliated" and left the meeting.  Id. ¶ 25.  Following this incident, Plaintiff's "PTSD, anxiety, [and] depression" were re-triggered.  Id. ¶ 30.

An hour after the meeting, Gray-Koyier suffered additional injuries in a student altercation that required her to go to the emergency room and then stay home for two days.  Id. ¶ 35.  Gray-Koyier was asked by her employer to "go to Concentra" for a medical evaluation before returning to work, and was then "released to light duty" by Concentra.  Id. ¶¶ 38-39, 97.

On February 13, 2015, before Gray-Koyier could resume teaching, BCPS informed her that it had decided to "go in a 'different direction'" and terminated her.  Id. ¶ 40.  BCPS searched for her replacement and first hired a "lady," who did not last, and then a "younger man" who also did not last.  Id. ¶¶ 103-107.  After each departure, BCPS never offered Gray-Koyier her job back.  Id. ¶ 108.

Gray-Koyier timely filed her Title VII, ADEA, and ADA claims with the Equal Employment Opportunity Commission ("EEOC").  Id. ¶ 14.  The EEOC issued a right-to-sue notice on April 4, 2017.  Id.; Ex. A, ECF No. 18-1.  The notice stated "you may sue ... <u>until 90 days after you receive Notice that the [EEOC] has completed action on your charge</u>."  Id. (emphasis in

---

[4]   She suspects that Johnson found this information on the Maryland Judiciary Case Search website.  Id. ¶¶ 27-28.

6

original). Gray-Koyier filed the Complaint [ECF No. 1] on July 7, 2017.[5]

II.  DISMISSAL STANDARD

A motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rule of Civil Procedure test the legal sufficiency of a complaint. A complaint need only contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 554, 555 (2007) (alteration in original) (citations omitted). When evaluating a 12(b)(6) motion to dismiss, a plaintiff's well-pleaded allegations are accepted as true and the complaint is viewed in the light most favorable to the plaintiff. However, conclusory statements or "a formulaic recitation of the elements of a cause of action will not [suffice]." Id. A complaint must allege sufficient facts "to cross 'the line between possibility and plausibility of entitlement to relief.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Twombly, 550 U.S. at 557).

---

[5] The timeliness of the Complaint turns upon the date of receipt of the right-to-sue letter by Plaintiff since July 7, 2017 was the 91st day after April 7 but the 90th day after April 8.

7

Inquiry into whether a complaint states a plausible claim is a "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Twombly, 550 U.S. at 557). Thus, if "the well-pleaded facts [contained within the complaint] do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (alteration in original)).

III. DISCUSSION

BCPS seeks dismissal of all of Gray-Koyier's claims as untimely pursuant to 42 U.S.C. § 2000e-5(f)(1) and 29 U.S.C. § 626(e), arguing that she was required to file her claims no later than July 6, 2017, ninety days after receiving her EEOC notice on July 7, 2017. Def.'s Mot. at 4, ECF No. 22.

BCPS does not deny that Gray-Koyier has sufficiently pled Title VII claims of gender discrimination, retaliation, and hostile workplace. Id. at 6-10. However, BCPS moves to dismiss Plaintiff's age and disability claims, arguing that Gray-Koyier has not sufficiently alleged (1) an age discrimination claim; and (2) that her disability accommodation request was reasonable because she was able to perform the "essential functions" of her

job. Id.

    a. Timeliness

Any person alleging an unlawful discriminatory employment action must comply with the procedures set forth in 42 U.S.C. § 2000e-5 of Title VII. The same procedures apply regarding ADA claims, 42 U.S.C. § 12117(a), and ADEA claims. 29 U.S.C. § 626(e). Once the EEOC decides not pursue an action on behalf of the individual, the EEOC must provide notice to the individual of their private right to sue. 42 U.S.C. § 2000e-5(f)(1); 29 C.F.R. § 1601.28.

Upon receipt of the notice, an individual has 90 days to preserve their claim and initiate an action. Id. The 90-day deadline is treated like a statute of limitations subject to equitable tolling, but otherwise is "strictly enforced." Weathersbee v. Balt. Cnty. Fire Dep't, 970 F. Supp. 2d 418, 427 (D. Md. 2013); see Harvey v. City of New Bern Police Dep't, 813 F.2d 652, 654 (4th Cir. 1987) (holding that Title VII action filed one day after 90-day deadline was untimely); see also Woodruff v. Peters, 482 F.3d 521, 525 (D.C. Cir. 2007) ("Courts apply this limit strictly and 'will dismiss a suit for missing the deadline by even one day.'"). Absent evidence to the contrary, an individual is presumed to have received the right-to-sue notice within three days from after it was issued and

mailed.  Fed. R. Civ. Pro. 6(d); Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 148 n.1 (1984).

Here, the right-to-sue notice was issued by the EEOC on April 4, 2017, and the presumption is that she received the notice three days later, on April 7, 2017.  This receipt date would make the Complaint filing on July 7, 2017 untimely, as it is one day after the July 6 deadline.  Def.'s Mot at 4-5, ECF No. 22.

In response, Gray-Koyier in her Opposition has provided her attorney's sworn affidavit corroborated by a certified mail tracking report indicating that she received the notice on April 10, 2017.  Pl.'s Opp. at 5, ECF No. 23; Ex. A, ECF No. 23-1.  The tracking report states "[the] item was delivered to an individual at the address at 4:26 pm on April 10, 2017." Id. (emphasis added).  The presumption that a right-to-sue notice was received within three days of issuance is rebuttable by "admissible evidence from which it could be reasonably be inferred . . . that the notice was mailed later than its typewritten date."  Weathersbee, 970 F. Supp. 2d at 427-28 (quoting Sherlock v. Montefiore Med. Ctr., 84 F.3d 522, 526 (2d Cir. 1996)).  Accordingly, Gray-Koyier has presented evidence from which it could be found that the notice was received on July 10 and, therefore, that the Complaint was timely filed.

Thus, Plaintiff has alleged facts that plausibly claim that the Complaint was timely filed.

Although the Complaint does not expressly state the July 10 received date, the Court finds the pleading adequate to present a plausible claim of timeliness. Moreover, it is certain that Plaintiff could amend the Complaint to satisfy any alleged deficiency in her timeliness allegation.

"[I]n determining whether to dismiss the complaint [, a court may consider a document not contained therein when] it was integral to and explicitly relied on in the complaint and because the [defendants] do not challenge its authenticity." Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999); see Braun v. Maynard, 652 F.3d 557, 559 n.1 (4th Cir. 2011) (applying this standard to documents attached to plaintiff's response to defendant's motion to dismiss). Only statements "that raise new facts constitute matters beyond the pleadings and cannot be considered on a Rule 12(b)(6) motion." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448-49 (4th Cir. 2011).

In the present case, Gray-Koyier asserted in her pleading "this suit [was filed] within ninety days after receipt of her right-to-sue letter issued from the EEOC." Am. Comp. ¶ 14, ECF No. 18. The July 7 or later received date is not a "new fact," but was "explicitly relied" upon by Gray-Koyier, and BCPS has

not now[6] challenged the accuracy of Plaintiff's receipt date contention.

Accordingly, the Court shall not dismiss Plaintiff's Complaint as untimely.

b. <u>Failure to State a Claim</u>

BCPS seeks dismissal of Gray-Koyier's age and disability discrimination claims.

i. <u>Age Discrimination (Count I)</u>

Pursuant to the ADEA, it is "unlawful for an employer . . . to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). To plausibly state an ADEA claim without direct evidence of age discrimination, a plaintiff must allege: "(1) [s]he is a member of a protected class – that is 40 years or older; (2) [s]he suffered an adverse employment action; (3) [s]he was performing [her] job duties at a level that met [her] employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or [s]he was replaced by a substantially younger person." <u>Bodkin v. Town of Strasburg, Va.</u>, 386 F. App'x 411, 413-14 (4th Cir.

---

[6] BCPS has not admitted timeliness and could contend at trial, or on summary judgment, that Plaintiff cannot establish that the letter was received after July 6, 2017 so that the Complaint was not timely filed.

2010) (citations omitted) (alterations in original). A plaintiff must also allege "that age was not merely a motivating factor of the challenged adverse employment action but was in fact its 'but-for' cause.'" Hartman v. Univ. of Md. at Balt., 595 F. App'x 179, 181 (4th Cir. 2014) (citing Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 180 (2009)).

Gray-Koyier, who was forty-eight years old when hired as a long-term substitute teacher, is a member of a protected class. Am. Compl. ¶ 18, ECF No. 18. She alleges that she suffered an adverse employment action when she was terminated. Id. ¶ 40. Gray-Koyier's assertion that "[d]efendant issued no written discipline to Plaintiff during her employment," creates a plausible inference that her employer was satisfied with her work performance during this time. Id. ¶ 47.

However, the Amended Complaint fails to allege sufficient facts to support a contention that Gray-Koyier's position was filled by a substantially younger person. Gray-Koyier merely states that she was replaced first by "a lady" and then a "younger man." Id. ¶¶ 103-07. She does not indicate whether the original replacement of "a lady" was younger than she was. Moreover, she does not indicate how much younger the second

replacement was than she.[7] See Bodkin, 386 F. App'x at 413-14 (requiring that the replacement is substantially younger); see also O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 313 ("[T]he fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination.").[8]

Gray-Koyier has not alleged facts sufficient to establish that her age was a "but-for cause" of her termination. The Complaint presents no more than a "threadbare recital[] of the elements of a cause of action for age discrimination, supported by mere conclusory statements." Iqbal, 556 U.S. at 678; Hartman, 595 F. App'x at 181.

Accordingly, the Court shall grant BCPS's motion to dismiss Gray-Koyier's age discrimination claim under Count I.

ii. Disability Discrimination (Count IV)

The ADA was enacted to eliminate unlawful discrimination against individuals with disabilities. 42 U.S.C. § 12112(a). Unlawful discrimination includes the failure to make "reasonable accommodations to the known physical . . . limitations of an

---

[7] This is assuming that the age of the second replacement is even relevant to the current analysis.

[8] Although the Fourth Circuit has not offered an exact range, it has assumed that a twelve-year age difference between the plaintiff and the replacement was substantial. See Vaughan v. MetraHealth Co., Inc., 145 F.3d 197 (4th Cir. 1998).

14

otherwise qualified individual . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." Id. § 12112(b)(5)(A).  A "qualified individual" is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." Id. § 12111(8).  Accordingly, to plausibly state a "failure to accommodate" claim, a plaintiff must allege: "(1) that [s]he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of [her] disability; (3) that with reasonable accommodation [s]he could perform the essential functions of the position . . . ; and (4) that the [employer] refused to make such accommodations." Wilson v. Dollar Gen. Corp., 717 F.3d 337, 344 (4th Cir. 2013).

BCPS does not contest that BCPS had notice of her stated disability and refused to grant an accommodation. Def.'s Mot. at 7, 10, ECF No. 22.  Rather, BCPS argues that Plaintiff is not a "qualified individual with a disability" under the statute and that she was unable to perform the essential functions of her job, so her requested accommodations were unreasonable. Id.

As stated above, a "qualified individual" is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds

15

or desires." 42 U.S.C. § 12111(8). Relevant factors in determining the "essential functions" of a position include, for example, "a[n employer's] written description of the job", Id. § 12111(8), and "[t]he employer's judgment as to which functions are essential." 29 C.F.R. § 1630.2 (n)(3)(1)); Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 579 (4th Cir. 2015). Once the "essential functions" of the job have been determined, the "failure to accommodate" inquiry then turns to whether, "with a reasonable accommodation, [plaintiff] could perform the essential functions of the position . . ." Id. at 580-81.

Gray-Koyier alleges that after she made her disability accommodation request, the school's principal initially granted her accommodation and relieved her from "bus duty" and other coverage duties, but that this grant was revoked and she was terminated one week later. Am. Compl. ¶¶ 84-86, ECF No. 18. The Amended Complaint does not provide a written job description that would support an inference that bus duty and other coverage duties are not an essential function of her teaching job. However, Plaintiff alleges that when she requested a "reduced workload" in light of her doctor's note, the school principal replied "no problem" and suggested to remove her from such duties and then proceeded to inform the assistant principal of the change. Id. ¶¶ 84-85.

The allegation that the principal initiated the proposal, supports a plausible inference that the "employer's judgment" was such that these coverage duties were not "essential functions" of Gray-Koyier's substitute teaching job. The Court finds that this accommodation would have allowed Gray-Koyier to perform her teaching duties, which was the "essential function" of her job. Plaintiff has alleged that she taught classes from her promotion in November 2014 until her termination in February 2015 (except for two days when she was on medical leave), without any written discipline or any indication that her disability hindered her teaching duties. Id.

BCPS challenges the accuracy of Plaintiff's allegations. Def.'s Mot. at 7-10, ECF No. 22. BCPS contends that Gray-Koyier was unable to "teach students the assigned courses during the scheduled class times" and her request would have "necessitate[d] that other teachers in the building be required to teach the classes that she was expected to teach." Id. at 9. Of course, BCPS can dispute Gray-Koyier's factual allegations and can deny that she was able to teach the classes due to her disability and perform her essential functions as a long term substitute teacher. However, a 12(b)(6) motion to dismiss is not the proper vehicle for resolution of this factual challenge. The Court must accept Plaintiff's allegations as true. At this stage of the litigation, Gray-Koyier need only allege a set of

17

facts that plausibly present a claim for relief, <u>Twombly</u>, 550 U.S. at 557. The Court finds that she has met the pleading requirement as to her disability claim.

IV. <u>CONCLUSION</u>

Accordingly:

1. Defendant Baltimore County Public Schools' Motion to Dismiss [ECF No. 3] is DENIED AS MOOT.

2. Defendant Baltimore County Public Schools' Motion to Dismiss Plaintiff's Amended Complaint [ECF No. 22] is GRANTED IN PART and DENIED IN PART.

    a. Plaintiff Gray-Koyier's age discrimination claim is dismissed.

    b. All other claims remain pending.

3. Plaintiff shall arrange a telephone conference with the Court and all parties to be held by April 12, 2018, to discuss the scheduling of further proceedings herein.

SO ORDERED, this <u>Monday, March 26, 2018</u>.

/s/
Marvin J. Garbis
United States District Judge